Lynn MARTIN, Secretary of Labor,
United States Department of
Labor, Petitioner,

v.

AMERICAN CYANAMID COMPANY,
Respondent.

No. 92–3321.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1993.

Decided Sept. 15, 1993.

Edward Falkowski (argued and briefed), Barbara Werthmann, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for petitioner.

Kenneth B. Stark (argued and briefed), Duvin, Cahn & Barnard, Cleveland, OH, for respondent.

Peter L. de la Cruz (briefed), Kris Anne Monteith, Keller and Heckman, Washington, DC, amicus curiae.

Before: RYAN, Circuit Judge; KRUPANSKY, Senior Circuit Judge; and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Hazard Communication Standard (HCS), 29 C.F.R. § 1910.1200, promulgated by the Secretary of Labor, requires that chemical manufacturers, importers and distributors ensure that each container of hazardous chemicals leaving the workplace be labeled with "appropriate hazard warnings." 29 C.F.R. § 1910.1200(f)(1)(ii). The issue in this case is whether the Secretary permissibly can interpret the HCS to require that shipping labels include the hazardous chemicals' known effects on "target organs," i.e., specific symptoms and signs of exposure.

The Secretary of Labor petitions for review of the final order of the Occupational Safety and Health Review Commission (OSHRC), reversing the determination of the ALJ that respondent American Cyanamid Company violated the HCS by utilizing hazardous chemical container labels that did not provide warnings of the chemicals' target organ effects. The OSHRC held that the HCS does not require that labels describe target organ effects but, rather, requires a case-by-case factual determination of whether the label warnings are appropriate under the circumstances. The OSHRC further held that the Secretary had not met the burden of demonstrating that Cyanamid's labels are not appropriate.

We grant the Secretary's petition for review, and set aside the order of the OSHRC.

## I.

Congress enacted the Occupational Safety and Health Act to assure safe and healthful working conditions. 29 U.S.C. § 651(b). The purpose of the Act is "forward-looking; i.e., to prevent the first accident." *Brock v. L.E. Myers Co.*, 818 F.2d 1270, 1275 (6th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987) (citing *Mineral Indus. & Heavy Constr. Group v. OSHRC*, 639 F.2d 1289, 1294 (5th Cir.1981)). The Act authorizes the Secretary to promulgate safety and health standards, and requires employers to comply with those standards. 29 U.S.C. §§ 654(a)(2), 655. Those standards "shall prescribe the use of labels or other forms of warning as are necessary to insure that employees are apprised of all hazards to which they are exposed," including relevant symptoms and appropriate emergency treatment. 29 U.S.C. § 655(b)(7).

**Hazard Communication Standard 29 C.F.R. § 1910.1200**

The Hazard Communication Standard at issue was promulgated in November 1983, with an effective date of November 25, 1985. Its stated objective is to "ensure that the hazards of all chemicals produced or imported by chemical manufacturers or importers are evaluated, and that information concerning their hazards is transmitted to affected employees and employers." 29 C.F.R. § 1910.1200(a).

To achieve this objective, the HCS requires that a manufacturer of hazardous chemicals inform not only its own employees of the dangers posed by the chemicals, but downstream employers and employees as well. The manufacturer is required to have or to prepare a material safety data sheet (MSDS) for each hazardous chemical, and to provide the MSDS to distributors and em-

---

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

ployers. 29 C.F.R. § 1910.1200(g). The HCS lists 12 separate categories of information that must be included in the MSDS, including the identity of the chemical; health hazards posed; handling precautions; and the identity, address and phone number of the preparer of the MSDS for contact in an emergency. The manufacturer is also required to ensure that each container of hazardous chemicals leaving the workplace is labeled with "appropriate hazard warnings." 29 C.F.R. § 1910.1200(f)(1)(ii).

At issue in this case is the Secretary's interpretation of "appropriate hazard warning" to require that shipping labels for containers of "hazardous chemicals" disclose the effects of exposure to the chemical by describing known changes in body function and the signs and symptoms that signal the changes. "Hazard warning" is defined in the HCS to mean words or symbols "appearing on a label or other appropriate form of warning which convey the hazards of the chemical(s) in the container(s)." 29 C.F.R. § 1910.1200(c). "Hazardous chemical" is defined to mean any chemical which is a physical hazard (e.g., combustible or explosi) or a health hazard. "Health hazard" is defined broadly to mean

> a chemical for which there is statistically significant evidence based on at least one study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed employees. The term *health hazard* includes chemicals which are carcinogens, toxic or highly toxic agents, reproductive toxins, irritants.... *Appendix A provides further definitions and explanations of the scope of health hazards covered by this section....*

29 C.F.R. § 1910.1200(c) (emphasis added).

Appendix A to the HCS, in turn, states: Health hazards may cause measurable changes in the body—such as decreased pulmonary function. These changes are generally indicated by the occurrence of signs and symptoms in the exposed employees—such as shortness of breath, a nonmeasurable, subjective feeling. *Employees exposed to such hazards must be apprised of both the change in body func-*

*tion and the signs and symptoms that may occur to signal that change.*

(Emphasis added.) Appendix A states that any chemicals which meet the following criteria are "health hazards":

> 7. *Target organ effects.* The following is a target organ categorization of effects which may occur, including examples of signs and symptoms and chemicals which have been found to cause such effects.

Among the noninclusive list of signs and symptoms are jaundice, liver enlargement, edema, narcosis (drowsiness), decrease in motor functions, cyanosis (blueness of skin as from imperfectly oxygenated blood), loss of consciousness, cough, tightness in chest, shortness of breath, rashes, irritation, birth defects, sterility, conjunctivitis, and corneal damage.

In August 1985, OSHA issued a compliance directive, CPL Instruction 2–2.38, to its field staff to ensure uniform enforcement of the HCS. There is no dispute that this directive was publicized through reporting services. With respect to what constitutes an appropriate hazard warning for a chemical shipping label, the instruction states:

> The "hazard warning" must convey the hazard of the chemical. *This is intended to be specific information regarding the hazard—the specific hazards indicated in the standard's definitions for "physical" and "health" hazards would be appropriate.* Phrases such as "caution", "danger", or "harmful if inhaled", generally do not meet the intent of the standard by themselves. The definition of "hazard warning" states that the warning must convey the hazard of the chemical. *If, when inhaled, the chemical causes lung damage, then that is the appropriate warning. Lung damage is the hazard, not inhalation.* There are some situations where the specific target organ effect is not known. Where this is the case, the more general warning statement would be permitted. For example, if the only information available is an Lc50 test result, "harmful if inhaled" may be appropriate.

(Introduction CPL 2–2.38, App. A ¶ (f)(1); emphasis added.)

## Enforcement of the HCS Against American Cyanamid

American Cyanamid produces resins and molding compounds for sale to customers in the plastics industry. In December 1985, an OSHA compliance officer inspected Cyanamid's Perrysburg, Ohio, plant to investigate Cyanamid's compliance with the HCS. The compliance officer obtained the labels and MSDSs for Cyanamid's products and ultimately issued a citation to Cyanamid for alleged improper labelling of four of its products, each of which was an untested mixture containing chemicals deemed hazardous by the HCS.

**XC–4001:** contains butyl alcohol and propylene glycol methyl ether. This product was labeled in pertinent part "WARNING! HARMFUL IF INHALED/CAUSES EYE IRRITATION/MAY CAUSE SKIN IRRITATION." Relying on Cyanamid's MSDS for XC–4001 and the NIOSH/OSHA Occupational Health Guidelines for Chemical Hazards,[1] the compliance officer maintained that the label should address the target organ effects associated with those chemicals, such as the effects set forth in Cyanamid's MSDS: "Overexposure . . . may cause eye and respiratory tract irritation, headache, dizziness or nausea."

**XC–4005:** contains butyl alcohol. The warning on this label was identical to that of XC–4001. The OSHA compliance officer maintained that the label should contain a statement similar to that required for XC–4001.

**Glaskyd:** contains amorphous silica and talc. This label warned "CAUTION: MAY BE HARMFUL IF INHALED." The compliance officer contended that the label should warn of lung damage if the product is inhaled.

**Cyglas:** contains silica and vinyl toluene. This label warned "CAUTION: MAY BE HARMFUL IF INHALED." The compliance officer contended that the label should address the effects of those substances; e.g., lung damage (silica), headache, dizziness and drowsiness (vinyl toluene).

## Proceedings Below

Cyanamid contested the citation, and the Occupational Safety and Health Review Commission, an independent tribunal whose members are appointed by the President subject to Senate confirmation, was required to adjudicate the dispute.[2] 29 U.S.C. § 661(a). The OSHRC's adjudicatory function is first performed by an administrative law judge, whose decision becomes final unless the OSHRC grants review. 29 U.S.C. § 661(j).

The ALJ affirmed the citation against Cyanamid, noting first that the OSHA compliance officer had verified that each of the products was a mixture of substances deemed hazardous under the HCS. 29 C.F.R. § 1910.1200(d)(3). An unreacted mixture of two or more chemicals is presumed to present the same health hazards as its chemical components unless testing of the product as a whole shows otherwise. 29 C.F.R. § 1910.1200(d)(5)(ii). Cyanamid acknowledged that it had not conducted independent studies to determine the hazards of each mixture as a whole.

According to the ALJ, the "pervading question in this case is whether the Secretary's interpretation that labels must reflect target organ effects is in accord with the purpose and scheme of the HCS and is reasonable." The ALJ noted that the HCS requires that hazardous chemical labels contain "appropriate hazard warnings," meaning that the "hazards of the chemical" be disclosed. According to the ALJ, Appendix A to the HCS expands on the definition of

---

**1.** The National Institute for Occupational Safety and Health (NIOSH) was created by the OSH Act. 29 U.S.C. § 671. The cited guidelines are jointly prepared by the Department of Health and Human Services and the Department of Labor as a source of information for employers, employees, physicians, industrial hygienists and other occupational health professionals.

**2.** " 'The Commission's function is to act as a neutral arbiter and determine whether the Secretary's citations should be enforced'; it 'was created to avoid giving the Secretary both prosecutorial and adjudicatory powers.' " *General Carbon Co. v. OSHRC*, 860 F.2d 479, 481 (D.C.Cir. 1988) (quoting *Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985)).

"health hazard," and makes clear that signs and symptoms of exposure must be communicated to workers. The ALJ thus concluded that the Secretary's interpretation of the HCS was reasonable and should be enforced.

The OSHRC reversed, concluding that the HCS itself, including Appendix A, did not expressly require that target organ effects be listed on container labels. The OSHRC further found that the Secretary's interpretation of the HCS was inconsistent with the standard's broad, performance-oriented language, its preamble, and the history of its promulgation. The OSHRC held that the HCS requires a case-by-case factual determination of whether a given label is "appropriate," and that the Secretary failed to demonstrate by a preponderance of the evidence that Cyanamid's labels did not contain appropriate hazard warnings. The OSHRC emphasized that it did not address whether a standard that expressly required employers to list target organ effects on chemical labels would be reasonable, but only that the HCS did not impose that requirement.

## II.

■ The issue presented is one of first impression. We agree with the ALJ who initially adjudicated this dispute that the central question is whether the Secretary's interpretation of the HCS is a reasonable one. With this question as our focus, we are able to look to established principles to guide our determination.

In *Martin v. OSHRC*, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), the Court was required to resolve whether a reviewing court should defer to the Secretary of Labor or to the OSHRC when each furnishes a reasonable but conflicting interpretation of an ambiguous regulation promulgated by the Secretary under the OSH Act. The Court looked to the unusual regulatory structure of the OSH Act, in which enforcement and rule-making powers are reposed in the Secretary, while adjudicatory functions are assigned to the OSHRC. Based on the structure and history of the Act, the Court reasoned that the power to issue authoritative interpretations of regulations is a necessary adjunct to the Secretary's powers to promulgate and

enforce national safety and health standards, and concluded that a reviewing court should defer to the Secretary's reasonable interpretation of an ambiguous regulation.

In reaching this conclusion, the Court recited familiar principles of administrative law:

> It is well established "that an agency's construction of its own regulations is entitled to substantial deference." In situations in which "the meaning of [regulatory] language is not free from doubt," the reviewing court should give effect to the agency's interpretation so long as it is "reasonable," that is, so long as the interpretation "sensibly conforms to the purpose and wording of the regulations."

*Id.* 499 U.S. at 148–52, 111 S.Ct. at 1175–76 (citations omitted). In emphasizing the narrowness of its holding, the Court stressed that it dealt only with the separation of powers between the Secretary and the OSHRC.

> [A]lthough we hold that a reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary, we emphasize that the reviewing court should defer to the Secretary only if the Secretary's interpretation *is* reasonable. The Secretary's interpretation of an ambiguous regulation is subject to the same standard of substantive review as any other exercise of delegated lawmaking power. See 5 USC § 706(2)(A) ... *Batterton v. Francis,* [432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977)].

*Id.* 499 U.S. at 158, 111 S.Ct. at 1180 (emphasis in original). Both the cited statute and the cited case instruct a reviewing court to uphold agency action unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

It is plainly evident that the Secretary's interpretation of the HCS conforms to both the language and purpose of the HCS. In concluding that the requirement that shipping labels' "appropriate hazard warnings" include target organ effects of exposure, the Secretary did no more than track the language of the HCS itself through to its Ap-

pendix A and the express language there that target organ effects *are* health hazards. As recognized by CPL Instruction 2–2.38, health hazards are "hazards of the chemical," required to be included in "appropriate hazard warnings."

Likewise, the Secretary's interpretation sensibly conforms to the stated purpose of the HCS, .i.e., to ensure that information about the hazards of chemicals is communicated to affected persons. A worker who knows that dizziness or nausea results from exposure to a chemical with which he is working is better able to recognize his peril and take protective action than one who experiences those symptoms but knows only from the chemical's label that it is "harmful if inhaled." As interpreted by the Secretary, the HCS requires that meaningful information be provided to downstream users, information that will provide an immediate alert if a worker experiences the signs and symptoms of exposure.

Cyanamid contests the reasonableness of the Secretary's interpretation of the HCS on a number of grounds, all of which have been carefully considered by this court. We address Cyanamid's key contentions herein.

■ Cyanamid's principal argument is that the Secretary's interpretation is inconsistent with the preamble to the HCS, 48 Fed.Reg. 53,280, which accompanied its adoption and sets forth its purpose and history. Cyanamid relies on the preamble's explanation that the HCS as adopted rejected an earlier approach which provided for labels "including extensive information" in favor of a labeling system that served as an "immediate warning" or "alert mechanism." 48 Fed. Reg. 53,280, 53,301, 53,326. Cyanamid contends that the preamble indicates that the intent of the final HCS was to require detailed information in the MSDSs, and to require that chemical labels contain only that information necessary to provide a link to the MSDSs.

■ The preamble to a regulation may be consulted in determining the administrative construction and meaning of the regulation. *Martin v. OSHRC,* 941 F.2d 1051, 1056 (10th Cir.1991); *Ohio Manufacturers' Assoc. v. Akron,* 801 F.2d 824, 832–33 (6th Cir.1986), *cert. denied and appeal dismissed,* 484 U.S. 801, 108 S.Ct. 44, 98 L.Ed.2d 9 (1987). We agree with Cyanamid that the informational scheme of the HCS envisions the MSDS as the comprehensive vehicle for information regarding chemicals and their hazardous properties. 29 C.F.R. § 1910.1200(g)(2). Chemical labels are an integral part of the HCS system, serving to point employers and employees to the more detailed information contained in the MSDSs. However, the Secretary's determination that target organ effects should be listed on chemical shipping labels complements that objective, and furthers the goal that labels provide an immediate warning and an alert mechanism to supervisors and employees. We thus find no inconsistency between the HCS and its preamble. Moreover, we agree with the observation in *General Carbon Co. v. OSHRC,* 860 F.2d 479, 485 (D.C.Cir.1988): [3]

> The standards contain no suggestion, though, that a health hazard which is required to be reported on the MSDS can be omitted entirely from the labels. In fact, given the label's function in alerting employees to the more detailed information contained in the MSDS, it would make little sense to insist that a particular chemical be identified in the MSDS while imposing no corresponding labeling requirement.

Additionally, we note that much of Cyanamid's reliance on the preamble derives from its statements regarding the format of labels rather than their content. This distinction is evident in the preamble's discussion of the labeling guidelines of the American National Standards Institute (ANSI). The preamble confirms that the HCS as adopted permits

---

**3.** *General Carbon* held that hazard information could not be omitted from shipping labels on the ground that the downstream use of the product involved did not pose a significant risk of harm to any downstream user. The court noted that the HCS labeling requirement presumes that manufacturers will generally be uncertain as to the downstream uses of their products, and that manufacturers should therefore communicate the hazard potential of their products, leaving to the downstream employers the communication of the specific nature and degree of the hazard their employees are likely to encounter.

the continued use of many existing labeling systems, including those prepared in accordance with the guidelines in the ANSI voluntary consensus standard on labeling. *"Use of these systems would not mean that employers would not be held accountable for providing the information required. It simply meant that they would not have to alter the format of their information presentation."* [4] 48 Fed.Reg. 53,301 (emphasis added). In sum, the preamble does not provide a basis on which to reject the Secretary's reasonable and consistent interpretation of the HCS.

■ Cyanamid relies additionally on what it claims is the Secretary's inconsistent interpretation of the phrase "appropriate hazard warning." Whether the Secretary has consistently interpreted a regulation is a factor bearing on the reasonableness of that interpretation. *Martin*, 499 U.S. at 156–58, 111 S.Ct. at 1179. However, the claimed inconsistency in this case is the Secretary's determination that in-plant chemical container labels need not contain the same information as shipping labels. This distinction finds support in the HCS itself and common sense. When used in-plant, a manufacturer's labeling system must be adequate to inform its own employees of the hazards of the chemicals in the workplace. Employers are required to train their employees on the labeling system, 29 C.F.R. § 1910.1200(h)(2)(iv), and are expressly permitted to use "signs, placards, process sheets, batch tickets, operating procedures, or other such written materials in lieu of affixing labels" in the plant so long as appropriate hazard warnings are communicated. 29 C.F.R. § 1910.1200(f)(5), (f)(6). In contrast, shipping labels must be sufficient to warn downstream users about the hazards of the chemicals. A manufacturer or distributor has no control over the

training given to downstream employers' workers, and may not be informed regarding the particular uses to which its products are put and the resulting degree of risk which they pose. It is thus reasonable to require manufacturers and distributors to provide greater information on their shipping labels. *See General Carbon*, 860 F.2d at 483–85; 48 Fed.Reg. 53,296, 53,307.

■ Finally, Cyanamid suggests that the Secretary's interpretation of the HCS renders it void for vagueness. We disagree.[5] While an employer is entitled to fair warning of conduct which an occupational health and safety standard prohibits or requires, this determination is made with reference to what an employer familiar with the industry could reasonably be expected to know. *Flour Constructors, Inc. v. OSHRC*, 861 F.2d 936, 941–42 (6th Cir.1988) (citing *Ray Evers Welding Co. v. OSHRC*, 625 F.2d 726, 732 (6th Cir. 1980)). In *Ray Evers*, this court rejected a similar challenge to a regulation which was construed to require an employer to require employees to wear appropriate safety equipment "whenever a reasonably prudent employer, concerned with the safety of his employees, would recognize the existence of a hazardous condition and protect against that hazard by the means specified in the citation." 625 F.2d at 731. The interpretation of the HCS to require that shipping labels contain target organ effects provides as much or greater certainty regarding the conduct required by the HCS as the "reasonably prudent employer" standard upheld in *Ray Evers.*

### III.

The Secretary's interpretation of the Hazard Communication Standard to require manufacturers, distributors and importers of

---

**4.** This caveat is reinforced in Appendix A to the HCS, where it is noted that while the acute effects defined by the ANSI Standard for Precautionary Labeling of Hazardous Industrial Chemicals include important health effects, "they do not adequately cover the considerable range of acute effects which may occur as a result of occupational exposure, such as, for example, narcosis."

**5.** We also reject Cyanamid's contention that expert testimony was necessary to prove a violation

of the HCS. That standard, as permissibly interpreted by the Secretary, requires only that target organ effects be listed, and information about those effects was readily available from Cyanamid's own MSDSs and the NIOSH/OSHA guidelines. The Secretary's burden of proof was met with evidence that Cyanamid's labels did not contain those target organ effects. *National Eng'g & Contracting Co. v. OSHRC*, 928 F.2d 762, 767–68 (6th Cir.1991).

hazardous chemicals to list target organ effects on their hazardous chemical shipping labels is a reasonable interpretation, and conforms to both the language and purpose of the HCS. We are not persuaded by the arguments advanced by Cyanamid that the Secretary's interpretation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. We thus **GRANT** the Secretary's petition for review, **SET ASIDE** the order of the OSHRC, and **DIRECT** that the order of Administrative Law Judge Edwin Salyers be **REINSTATED.**