

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-4-1996

# Sylvester v. Inland Bay

Precedential or Non-Precedential:

Docket 96-3699

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Sylvester v. Inland Bay" (1996). *1996 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 95-3699
_____

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE,
Appellant

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED
STATES OF AMERICA
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

(D.C. Civil No. 94-01689)

Argued September 30, 1996
Before:  ALITO and McKEE, Circuit Judges,
and GREEN Senior District Judge*

(Opinion Filed: December 4, 1996)

_____

OPINION OF THE COURT
_____


John A. Kane
Chief Counsel
Jason W. Manne (Argued)
Assistant Counsel
Office of Attorney General
  of Pennsylvania
Department of Public Welfare
300 Liberty Avenue
1403 State Office Building
Pittsburgh, PA 15222

Counsel for Appellant



* The Honorable Clifford Scott Green, Senior District Judge for
the Eastern District of Pennsylvania, sitting by designation.

                    Frank W. Hunger
                    Assistant Attorney General
                    Frederick W. Thieman
                    United States Attorney

                    Barbara C. Biddle
                    Irene M. Solet (Argued)
                    Attorneys, Appellate Staff
                    United States Department
                       Of Justice
                    Civil Division, Room 3617
                    10th & Pennsylvania Avenue, N.W.
                    Washington, D.C. 20530-0001

                    Counsel for Appellees

ALITO, Circuit Judge:

This case arises out of a debt of $800,885 that the Pennsylvania Department of Public Welfare ("Pennsylvania") owed the United States Department of Health and Human Services ("HHS"). HHS notified Pennsylvania of the debt in June 1991. (App. 235a–239a) Pennsylvania initially balked at having to pay, but eventually, in June 1993, paid the entire principal amount. (App. 16a) The dispute that remains is over the interest on the debt. HHS charged Pennsylvania interest at the private consumer rate of 15.125%, which was significantly higher than the rate usually charged by federal agencies to states, the current value of funds rate of 8%. Pennsylvania refused to pay the allegedly exorbitant interest and brought this action, claiming primarily: (a) that HHS's use of the private consumer rate was not only arbitrary and capricious but inconsistent with the common law and (b) that HHS did not follow the proper procedures in enacting its interest rate regulation. The district court found Pennsylvania's substantive claims to be without merit and its procedural challenges to be time–barred. We affirm.

I.

Until January 1987, HHS had a policy of not charging states interest on disallowances under the Aid to Families with Dependent Children program ("AFDC"). (Dist. Ct. Op. at 2) On January 5, 1987, however, HHS repealed the existing regulation and put in place a new policy under which all of its debtors, including states and local governments, were to be charged a rate of interest based on the prevailing private consumer rates. (App. 202a & Dist. Ct. Op. at 2) HHS's action was in response to congressional enactment of the Debt Collection Act of 1982 ("DCA"), which aimed at increasing the efficiency of government efforts to collect debts owed to the United States. See S. Rep. No. 378, 97th Cong. 378, 2d Sess. (1982), reprinted in 1982 U.S.C.C.A.N. 3377. Although the DCA expressly excluded states and local governments from its ambit, see 31 U.S.C. § 3701 (1983), it did not limit HHS's ability to assess interest under

the common law, see United States v. Texas, 507 U.S. 529, 530 (1993). Accordingly, with certain exceptions not at issue here, HHS's regulations called for the imposition of interest on debts owed by states and local agencies in the same way as it was imposed on other debtors. (App. 202a) See 52 Fed. Reg. 261 (1987) (codified at 45 C.F.R. § 30.13).

Under the HHS regulations at issue, interest on debts owed to HHS accrues from the date notice of the debt is mailed to the debtor, unless the debt is paid within 30 days of the notice. See 45 C.F.R. § 30.13(a). The regulations provide that the rate to be charged shall be the "rate of interest as fixed by the Secretary of the Treasury after taking into consideration private consumer rates of interest." Id. The regulations do not provide for administrative review of the imposition of interest, but allow the Secretary to waive the interest if: (i) the debt or interest "resulted from the agency's error, action or inaction . . . and [is] without fault on the part of the debtors" or (ii) collection "would defeat the overall objectives of a Departmental program." 45 C.F.R. § 30.13(h).

At issue is interest on a sum of $800,885 that was owed by Pennsylvania to HHS. HHS gave Pennsylvania notice of the debt in June 1991. (App. 235a–239a) Pennsylvania, however, chose not to reimburse the federal government within 30 days, which would have enabled it to avoid any and all interest payments. (App. 10a) By the time Pennsylvania paid the principal amount in July 1993, $232,173.22 in interest charges had accumulated, and interest was continuing to accrue at 15.125% per annum. (App. 14a & Dist. Ct. Op. at 2).

Pennsylvania sought administrative review of the interest assessment, but HHS's Departmental Appeals Board informed it that it lacked jurisdiction to review the interest assessment. (App. 18a–21a) The Board noted, however, that the form of administrative review available to Pennsylvania was a request to the Secretary for a waiver of interest, but Pennsylvania had not sought such a waiver. (App. 21a).

Pennsylvania commenced this action in October 1994, alleging that HHS's imposition of interest on it was arbitrary and violative of the common law. (App. 9a–13a) Pennsylvania also attacked the procedures by which HHS promulgated its interest rate regulations as inadequate. (App. 9a–13a) In February 1995, HHS responded with a motion for partial dismissal and summary judgment, arguing that Pennsylvania's substantive challenges were meritless and that its procedural challenges were time-barred. The district court granted the motion, adopting as its own opinion the Report and Recommendation of Chief Magistrate Judge Mitchell. Pennsylvania appeals.

II.

A. Challenges to the Application of the Regulation

Pennsylvania makes three attacks on HHS's application of the interest rate regulation. It argues: (i) that charging it interest without making an individualized determination as to the appropriateness of the charge was violative of the common law; (ii) that charging it the private consumer rate as opposed to the current value of funds rate was arbitrary and violative of

government-wide policies; and (iii) that the use of a rate certified by the Treasury for a different federal program contravened HHS's own regulations on how the applicable interest rate should be determined.

(i) Violation of the Common Law

Pennsylvania argues that HHS's interest rate regulation violates the common law because it fails to require a case-by-case determination of whether or not interest is appropriate and, if so, how much interest should be charged. We find no support for this argument in the law that Pennsylvania cites.

The parties do not dispute that the federal government is permitted to charge states interest on their debts. SeeUnited States v. Texas, 507 U.S. 529, 530 (1993) (United States has a federal common law right to collect prejudgment interest on debts owed to it by the states). Instead, the dispute is over the process by which interest can be charged. Pennsylvania points to the Supreme Court's decision in Texas as support for its argument. Specifically, Pennsylvania points to language in Texas that says that "courts," in awarding prejudgment interest, are to "weigh competing federal and state interests." Id. at 536.

But Texas does not help Pennsylvania. In that case, where there was an "individual case" in front of a district court, the Supreme Court said that the court considering the question "should weigh the federal and state interests involved." Id. at 533. But the Court neither said, nor implied, anything about whether or not an agency could pre-specify the rate it was going to charge states that were delinquent on a particular class of debts.

Pennsylvania asserts that the general holding of Texaswas that Congress, in enacting the DCA, intended to hold states to a more lenient standard than private debtors. However, the mere fact that Congress intended to exempt states from mandatorily having to pay at least the minimum rate specified by the DCA does not show that Congress either intended to exempt states from interest payments altogether, an argument rejected in Texas, see id. at 539, or that Congress intended to impose on federal agencies the costly task of an individualized consideration of the appropriateness of the rate to be applied in every case where a state is delinquent on its payments. Cf. id. at 537-38 ("[I]t does not at all follow that because Congress did not tighten the screws on the States, it therefore intended that the screws be entirely removed").

In sum, Pennsylvania has not given us a basis to read into the federal government's common law right to charge the states interest the costly and cumbersome obligation that a federal agency make an individualized determination as to the appropriate interest rate in every case where a state owes a debt. To impose such additional costs on federal agencies would undermine their right to charge interest by significantly increasing the cost of charging such interest.

In addition, the regulation in question allows the state to ask for a waiver of the interest charged. It states:

Waivers. The Secretary may waive collecting

all or part of interest, administrative costs
or late payment penalties, if–

(1) The debt or the charges resulted from the
agency's error, action or inaction (other
than normal processing delays) and without
fault on the part of the debtors; or

(2) Collection in any manner authorized under
this regulation would defeat the overall
objectives of a Departmental program.

45 C.F.R. § 30.13(h).

Even assuming that there is an obligation on the part of a federal agency to allow room for discretionary determinations as to how much interest to charge, the waiver provision would appear to satisfy such a requirement. Under Section 30.13(h)(2), the Secretary has the ability to choose not to charge any or part of the interest due (especially if the state presents a compelling case). 45 C.F.R. § 30.13(h)(2). Pennsylvania, however, has explicitly stipulated that it does not meet the requirements for a waiver, (Pennsylvania Br. at 10) even though, to us, the class of cases that could fit into the waiver category appears very broad.

(ii) Arbitrary and Inconsistent with Government–Wide Policies

Pennsylvania argues that government–wide policies require the use of the current value of funds rate, and that HHS acted arbitrarily and capriciously in charging the private consumer rate. We are not empowered to substitute our judgment for that of the agency unless its action was irrational, not based on relevant factors, or outside statutory authority. SeeCitizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). We find none of those conditions present here.

The government–wide policy specific to interest rates is set out in the Federal Claims Collection Standards, which state in relevant part:

The rate of interest assessed shall be the
rate of the current value of funds to the
U.S. Treasury (i.e., the Treasury tax and
loan account rate), as prescribed and
published by the Secretary of the Treasury in
the Federal Register and the Treasury Fiscal
Requirements Manual Bulletins annually or
quarterly, in accordance with 31 U.S.C. [§]
3717. An agency may assess a higher rate if
it reasonably determines that a higher rate
is necessary to protect the interests of the
United States.

4 C.F.R. § 102.13 (emphasis added).

The language of the regulation unambiguously allows HHS to charge a rate higher than the current value of funds rate, so long as it is reasonably in the government's interest. In this case, HHS charged the market rate of interest. That is almost per se reasonable, but is doubly so where the agency in question is seeking to provide its debtors with incentives to clear their

debts promptly.

(iii)  Inconsistent with Internal Regulations

Pennsylvania's next argument is that HHS's charging it the private consumer rate was inconsistent with HHS's own regulations authorizing that the private rate be charged.  At issue is the language in the regulation that "the Secretary shall charge an annual rate of interest as fixed by Secretary of the Treasury after taking into consideration private consumer rates of interest prevailing on the date that the Department becomes entitled to recovery."  45 C.F.R. 30.13(a)(1).  Here, HHS did use a rate fixed by the Secretary of the Treasury.  But Pennsylvania argues that HHS was not permitted to use a rate determined in conjunction with a different federal program.

Pennsylvania's argument is unavailing.  We owe "substantial deference to an agency's construction of its own regulation."  Elizabeth Blackwell Health Center For Women v. Knoll, 61 F.3d 170, 183 (3d Cir. 1995), cert. denied, 116 S. Ct. 816 (1996) (citing Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150-51 (1991)).  We "must defer to the Secretary's interpretation unless an `alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'"  Thomas Jefferson Univ. v. Shalala, 114 S. Ct. 2381, 2386-87 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).  The plain language of the regulation here does not compel Pennsylvania's suggested reading.  Nor has Pennsylvania pointed to any indications of the Secretary's intent at the time of promulgation that support its reading.  Relying on an approximation of the private interest rate on the market that was determined for a different federal program was reasonable under the regulation.  We cannot say that HHS violated its own regulation.

B. Procedural Challenges to the Regulation
Statute of Limitations

Pennsylvania asserts that HHS's interest rate regulation, adopted over eight years ago, is invalid because it was adopted pursuant to inadequate notice and comment procedures. The applicable statute of limitations for civil actions against the United States under the Administrative Procedures Act ("APA") is six years.  See, e.g., Dougherty v. United States Navy Bd., 784 F.2d 499, 500-01 (3d Cir. 1986).  The regulation at issue was promulgated in final form in January 1987, and this suit was brought in October 1994.  Hence, Pennsylvania has to demonstrate that the statute of limitations was tolled for its claim to survive.  We agree with the district court that Pennsylvania failed this task.

The essence of Pennsylvania's argument that the statute of limitations has not run is that its claim was not "ripe" until less than six years before suit was filed.  Ripeness is largely a prudential doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt

in a concrete way by the challenging parties."  Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).  In conducting a ripeness analysis, the court must consider whether or not the question is purely legal and easy to resolve, whether the agency or court has an interest in postponing review, and the extent to which the parties will be caused hardship if review is withheld.  See Eagle-Picher Indus., Inc. v. EPA, 759 F.2d 905, 915 (D.C. Cir. 1985); Erwin Chemerinsky, Federal Jurisdiction, §§ 2.4.2 & 2.4.3, 116-125 (1994); Cf. Artway v. Attorney General of N.J., 81 F.3d 1235, 1247 (3d Cir. 1996).

Pennsylvania provides us with little assistance in evaluating its ripeness challenge.  Its opening brief does not even mention the term "ripeness," let alone make a substantial argument as to why its claim was not ripe at the time of promulgation of the regulation.  Instead, Pennsylvania's opening brief merely states conclusorily that suit could not have been realistically brought at the time of promulgation of the regulation because there was no "substantial threat" of "real or immediate" harm at that time.  (Pennsylvania Br. at 23)  The first time that Pennsylvania mentioned the term "ripeness" was in its reply brief, but once again that brief contains nothing except a conclusory assertion that there was no substantial threat of real and immediate enforcement of the regulation at the time of its promulgation.  (Pennsylvania Reply Br. at 9)  These conclusory assertions are not enough.  We hold the ripeness argument waived.  See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir.) ("An issue is waived unless a party raises it in its opening brief, and for those purposes `a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (citation omitted) (ellipsis in original)), cert. denied, 115 S. Ct. 356 (1994); Service Employees Int'l Union v. Local 1199 N.E., 70 F.3d 647, 653 n.7 (1st Cir. 1995) (argument mentioned in passing, but not squarely argued, is waived).

In any event, Pennylvania's ripeness challenge fails on its merits.  As a threshold matter, we note that the ripeness challenge here arises in an unusual setting.  Pennsylvania's argument isn't the typical argument that its claim is ripe today and should be adjudicated.  Rather, the argument is that Pennsylvania's claim was not ripe in 1987, when HHS's interest rate regulation was promulgated.  In effect, Pennsylvania wants us to conduct a hypothetical retrospective ripeness analysis.  As a general matter, courts are not well suited to decide hypothetical questions about what they might have done in the past.  See Eagle-Picher, 759 F.2d at 914.  If courts were to "routinely conduct retrospective ripeness analyses where a late petitioner offers no compelling justification for not having filed his claim in a timely manner, [it]. . . would wreak havoc with the congressional intention that repose be brought to final agency action."  Id.

In this case, however, we can make the ripeness determination easily.  The Abbott Laboratories ripeness test involves consideration of: (I) the hardship to the parties of withholding consideration and (II) the fitness of the issues for

judicial decision.  387 U.S. at 149; Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 (3d Cir. 1996).  We evaluate these factors in light of the circumstances that were in existence at the time of the promulgation of HHS's interest rate regulation.

(I) Hardship to the Parties

The central question here is the extent to which denying the plaintiff judicial review would cause it hardship. See Chemerinsky, Federal Jurisdiction § 2.4.2, 116-23.  We conclude that had Pennsylvania made its procedural challenges at the time of the promulgation of the regulation, a federal court would have determined that postponing review would cause Pennsylvania hardship.

At the outset, we note that Pennsylvania does not dispute that it had notice of HHS's regulations more than six years before October 1994, when the instant suit was commenced. HHS had proposed the repeal of its former regulation in the Federal Register in 1985 and had received public comment on its proposed rule changes that same year.  (Dist. Ct. Op. at 3 n.2) Further, in April 1988, HHS issued an Action Transmittal Memorandum to all state agencies administering programs under Title IV of the Social Security Act (which covers AFDC), alerting them that, in accordance with its regulations, HHS was going to charge interest on disallowed paid claims for which states had received federal financial participation.  (Dist. Ct. Op. at 3 n.2).

Pennsylvania argues that its claim was not ripe at the time of promulgation of the regulation because it had no outstanding debts at the time and hence was not immediately subject to an interest charge.  In essence, the claim is that there was no hardship at the time of the promulgation of the regulation.  That is like saying that an increase in the interest rate charged for late payments on a credit card presents no hardship to the customer because the customer has not yet made a delayed payment under the new and higher interest rate.  We disagree with that premise.  Instead, we think it more likely that the customer will have to change his behavior at the time he is informed of the rate hike in order to avoid the risk of having to pay the higher interest rate and hence will suffer a direct hardship at the time of the rate hike.  The fact that the new, higher interest rate is a contingent future charge does not preclude it from causing harm to the party at the time it is put into place.  Cf. Riva v. Massachusetts, 61 F.3d 1003, 1012 (1st Cir. 1995) (fact that harm from adoption of a plan negatively affected payments that plaintiff was to receive many years into the future did not preclude adjudication of claim at the current time; the plan concretely harmed plaintiff in creating uncertainty regarding his future income stream); cf. also Lorance v. AT & T Technologies, Inc., 490 U.S. 900, 906-08 (1989) (in suit challenging a seniority system that allegedly discriminated against women, Court ruled that plaintiffs could sue at the time the system was put into place without waiting for the system's adverse effects because the very adoption of the plan imposed a concrete harm on the plaintiffs).

Had Pennsylvania challenged the regulation at the time

of its promulgation, that would have eliminated the uncertainty as to its obligations thereunder. The elimination of this uncertainty as to whether or not it could be charged a rate of interest as high as the rate applicable on the private consumer market would have made it easier for Pennsylvania to decide how long it wanted to delay on payments it owed HHS. Concurrently, HHS would also have benefitted from the resolution of uncertainty regarding the validity of its regulation.

(II) Fitness of the Issues for Resolution

Once again we look retrospectively to the time of promulgation of the regulation. The question is whether the issues were fit to be resolved at the time and whether the agency or court would have had an interest in postponing review. See Eagle–Picher, 759 F.2d at 915; see also Artway, 81 F.3d at 1249 ("The more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe, and vice–versa.") Pennsylvania's challenge would have been to whether HHS followed the proper notice and comment procedures in the enactment of its regulation. All the facts pertaining to such a challenge would have been fully developed and available at the time of the promulgation of the regulation. Delay would not have allowed the development of additional facts, and would only have served to make the relevant facts harder to retrieve.

In sum, the "injury" to Pennsylvania occurred at the time of the alleged procedural improprieties, and Pennsylvania was "aggrieved" at the time of promulgation of the regulation. See JEM Broadcasting v. FCC, 22 F.3d 320, 326 (D.C. Cir. 1994); Shiny Rock Mining Corp. v. United States, 906 F.2d 1362, 1365–66 (9th Cir. 1990). Hence, Pennsylvania's procedural challenge should have been brought within six years of the promulgation of the regulation.

C. Exclusion of Documents and Incomplete Rulemaking Record

In addition to challenging HHS's notice and comment procedures, Pennsylvania argues that the district court erred in excluding certain documents from the record on the ground of privilege and in granting summary judgment on an incomplete rulemaking record. From what we can discern, the documents Pennsylvania seeks pertain to the rulemaking process and not the application of the rule. Pennsylvania has failed to apprise us of how these documents or a more complete rulemaking record would change or influence our conclusions as to HHS's application of the regulation. Therefore, we see no basis for reversing the decision of the district court.

### III.

The decision of the district court is affirmed. Costs are awarded to the appellee, the United States.