*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0140P (6th Cir.)
File Name: 00a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INTERMET CORPORATION &
SUBSIDIARIES,
  *Petitioner-Appellant,*

  *v.*

COMMISSIONER OF INTERNAL
REVENUE,
  *Respondent-Appellee.*



No. 99-1046

On Appeal from the United States Tax Court.
No. 8246-97—Thomas B. Wells, Tax Court Judge.

Argued: December 6, 1999

Decided and Filed: April 20, 2000

Before: RYAN and SUHRHEINRICH, Circuit Judges;
BELL, District Judge.

---

  \*The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

---

**COUNSEL**

**ARGUED:** Eric R. Fox, IVINS, PHILLIPS & BARKER, Washington, D.C., for Appellant.  Edward T. Perelmuter, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Eric R. Fox, IVINS, PHILLIPS & BARKER, Washington, D.C., for Appellant.  Edward T. Perelmuter, Richard Farber, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

RYAN, Circuit Judge.  This case requires us to decide whether an affiliated group of corporations filing a consolidated federal income tax return is entitled to a 10-year carryback for certain "specified liability" expenses incurred by a member corporation with positive separate taxable income. We conclude that the 10-year carryback is applicable under this scenario.  Therefore, we will REVERSE the judgment of the United States Tax Court and REMAND to that court for further proceedings consistent with this opinion.

## I.

The relevant facts are undisputed.  Intermet Corporation is the common parent of an affiliated group of corporations that manufactures precision iron castings for automotive and industrial equipment producers. The group filed consolidated federal income tax returns for calendar years 1984 through 1992.  The group's members used the accrual method of accounting for both financial accounting and federal income tax purposes during this time period.

In closing, we note the lack of any controlling judicial authority on the issue we decide here. Apart from the Fourth Circuit's recent opinion in *United Dominion*, which we have already discussed, the parties and the Tax Court identified two published opinions addressing arguably analogous issues: *Amtel, Inc. v. United States*, 31 Fed. Cl. 598 (1994), *aff'd*, 1995 WL 364366 (Fed. Cir. June 19, 1995) (unpublished disposition), and *Norwest Corp. and Subsidiaries v. Commissioner*, 111 T.C. 105 (1998). We find these cases to be distinguishable, however. Explicit statutory or regulatory provisions supported the separate member approach that the courts adopted in *Amtel* and *Norwest*, rendering inapplicable the default rule in Treas. Reg. § 1.1502-80(a) that guides our analysis here. In summary, we conclude that the IRS's interpretation of the SLL carryback, in conjunction with the consolidated return regulations, is unreasonable. Intermet is entitled to the SLL carryback for Lynchburg's claimed SL expenses provided that those expenses qualify as a specified liability loss under I.R.C. § 172(f)(1)(B).

## IV.

For the foregoing reasons, we **REVERSE** the judgment of the United States Tax Court and **REMAND** to that court for further proceedings consistent with this opinion.

Intermet claimed that in 1992 it incurred certain "specified liability" (SL) expenses attributable to several member corporations. At issue in this appeal are certain claimed SL expenses incurred by Lynchburg Foundry Co., a member of the group between 1984 and 1992. Lynchburg's claimed SL expenses in 1992 consisted of: (1) $717,617 (plus $299,412.63 in interest) to cover its Michigan Single Business Tax liability for 1986, 1987, and 1988; and (2) interest on its 1987 federal income tax liability in the amount of $2,175.60.

In 1992, Lynchburg had a positive "separate taxable income" (STI), as defined under the Treasury Regulations, of $3,940,085. The STI was positive because Lynchburg's gross income exceeded its deductions. Lynchburg deducted its claimed SL expenses in calculating its 1992 STI. On the other hand, Intermet had a $25,701,038 "consolidated net operating loss" (CNOL) under the Treasury Regulations in 1992, far exceeding Lynchburg's claimed SL expenses.

In 1994, Intermet filed an amended income tax return to carry back to 1984 the claimed SL expenses incurred by Lynchburg during 1992. Intermet claimed this carryback on the ground that the expenses qualified for the 10-year carryback provision for "specified liability loss" (SLL) deductions under the Internal Revenue Code. On March 14, 1997, the IRS issued a notice of deficiency for calendar year 1984, disallowing the carryback. Intermet filed a petition in the United States Tax Court contesting the deficiency determination.

The case was submitted to the Tax Court on a fully stipulated record, presenting the following issues: (1) whether the claimed SL expenses fit the statutory definition of a SLL under I.R.C. § 172(f)(1)(B) (1994) (amended in 1998); and (2) whether Intermet could take advantage of the SLL 10-year carryback where the group had a CNOL but the member that incurred the SL expenses had a positive STI. The Tax Court held in favor of the IRS on issue two, and did not reach the first issue. *Intermet Corp. & Subsidiaries v. Commissioner*, 111 T.C. 294 (1998).

The Tax Court reasoned that Lynchburg's SL expenses did not qualify for the SLL carryback because they were not "taken into account" in computing Intermet's net operating loss (NOL) for 1992, as required by the Internal Revenue Code. *Id.* at 304-05. The court first noted that Lynchburg had no separate or individual NOL in 1992 because its gross income exceeded allowable deductions. *Id.* at 300. The Tax Court then proceeded to determine whether Lynchburg's SL expenses were "taken into account" in computing Intermet's CNOL. Relying on the Treasury Regulations, the court concluded that they were not. *Id.* at 301-03.

The court correctly noted that the consolidated return regulations do not treat members' SL expenses on a consolidated basis for purposes of calculating a group's CNOL. Instead, SL expenses are netted against a member's income in computing a member's STI, which is then used to calculate the group's CNOL. Based upon these regulations, the Tax Court reasoned an SL expense is "absorbed" by a group member's current income in computing the member's positive STI, and the "exhausted" expenses cannot be used by the group or parent for purposes of the 10-year SLL carryback. *Id.* at 302.

Intermet timely appealed the Tax Court's judgment, maintaining that it satisfied the statutory requirements for the SLL carryback. Specifically, Intermet contends that Lynchburg's SL expenses were "taken into account" in calculating Intermet's CNOL because the expenses were used in calculating Lynchburg's STI which, in turn, was used to calculate Intermet's CNOL. It makes no difference, Intermet agrees, whether Lynchburg's STI was positive or negative because Lynchburg's SL expenses would have a direct, dollar-for-dollar impact on both Lynchburg's STI and Intermet's CNOL in either event.

## II.

Since the facts are undisputed and this case presents a pure question of law, we review the Tax Court's judgment *de novo*. *Estate of Mueller v. Commissioner*, 153 F.3d 302, 304

do not exclude such application, actually supports its position. Tech. Adv. Mem. 9715002. The IRS reasoned that the Code's SLL provision applies on a separate member basis, rather than a consolidated basis, because the provision refers to "the taxpayer," and such language generally means individual members in the consolidated return context. *Id.* In contrast, the IRS in the instant cases ignores the section 1.1502-80 default rule. More importantly, the IRS has consistently and correctly referred to Intermet—not Lynchburg—as the "taxpayer" in this appeal.

We recognize that a Technical Advice Memorandum is not binding upon either the IRS or this court. *See* I.R.C. § 6110(j)(3) (1994). But the Memorandum illustrates the IRS's application of the SLL carryback in the consolidated return context—history that we may consider in determining whether the IRS's current position is reasonable. *See Wolpaw v. Commissioner*, 47 F.3d 787, 792 (6th Cir. 1995). We also understand that the IRS's basic position—that a consolidated group cannot invoke the SLL carryback if the SL expenses are incurred by a member with a positive STI—has remained unchanged. However, the IRS's shifting and incongruous reasoning in reaching this result highlights the fundamental flaw: its position does not comport with the current purpose and language of the Code and regulations. It is trying to fit a square peg into a round hole.

We also reject the IRS's contention that Intermet will reap a "double tax benefit" if it uses SL expenses both to offset Lynchburg's positive STI and to extend the carryback period from three years to 10 years. Again, the IRS errs by attributing independent significance to the STI that does not exist. By offsetting part of Lynchburg's positive STI, the SL expenses produced no tax benefit whatsoever. Intermet—not Lynchburg—was the taxpayer for 1992. Intermet derived no tax benefit from the SL expenses in 1992 because Intermet had a CNOL exceeding $25 million and incurred no tax liability whatsoever in that year. Thus, the SL expense deductions produced only a single tax benefit—the ability to carry back those expenses to prior tax years.

method may also apply in cases such as this one that involve carrybacks to a consolidated return year, pointing out that section 1.1502-79(a)(3) does not explicitly limit its application to separate return years.  Tech. Adv. Mem. 9715002.

The IRS's interpretation ignores a "fundamental rule of statutory construction that statutory language is to be read in pertinent context rather than in isolation." *Oates v. Oates*, 866 F.2d 203, 206 (6th Cir. 1989).  When reading section 1.1502-79A(a) as a whole, there is no question that it applies only to the separate return scenario.  Section 1.1502-79A is entitled "separate return years"; subsection (a) is entitled "carryover and carryback of consolidated net operating losses to separate return years"; and subsection (a), including its illustrative examples, addresses only situations involving separate return years.  Indeed, the IRS has recognized in the past that "although the [CNOL] is apportioned to individual members for purposes of carry backs to separate return years, the apportioned amounts are not separate NOLs of each member."  49 Fed. Reg. 30528, 30530 (1984) (preamble to Prop. Treas. Reg. § 1.1502-21(g)).  We note that the Fourth Circuit recently held that a consolidated taxpayer is entitled to a "product liability loss" carryback—comparable to the SLL carryback—for that portion of an individual member's product liability expenses that does not exceed the member's "separate net operating loss" as calculated under section 1.1502-79A(a)(3).  *United Dominion Indus., Inc. v. United States*, __F.3d __, 2000 WL 305134, at *8-9 (4th Cir. March 24, 2000).  The court offered no analysis to support its conclusion that Treas. Reg. § 1.1502-79A(a)(3) dictates a method for calculating a member's "separate net operating loss" outside of the separate return context.  *Id.* at *8, n.17.  For the reasons outlined above, we are unpersuaded by the Fourth Circuit's approach.

A second inconsistency also arises out of the 1997 Technical Advice Memorandum.  The IRS maintained in the Memorandum that Treas. Reg. § 1.1502-80, which applies the Code provisions to the group to the extent that the regulations

(6th Cir. 1998), *cert. denied*, 525 U.S. 1140 (1999).  Statutory "provisions granting a [tax] deduction . . . are matters of legislative 'grace' and are construed strictly (in favor of the government)." *Weingarden v. Commissioner*, 825 F.2d 1027, 1029 (6th Cir. 1987).  The taxpayer bears the burden of pointing to a clear provision entitling it to a claimed deduction. *Indopco, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

Where an agency regulation interprets an ambiguous statutory provision, we limit our review to whether the regulation is a reasonable, but not necessarily the best, interpretation. *Atlantic Mut. Ins. Co. v. Commissioner*, 523 U.S. 382, ___, 118 S. Ct. 1413, 1418 (1998).  An agency's interpretation of its own ambiguous regulation also deserves substantial deference if the interpretation is reasonable insofar as it "'sensibly conforms to the purpose and wording of the regulations.'" *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991) (quoting *Northern Indiana Pub. Serv. Co. v. Porter Cty. Chapter of Izaak Walton League of Am., Inc.*, 423 U.S. 12, 15 (1975)).  *See also Martin v. American Cyanamid Co.*, 5 F.3d 140, 144 (6th Cir. 1993).

### III.

This case presents a straightforward issue, but one that arises in the context of a complex regulatory framework.  We therefore proceed to summarize that framework as it existed in 1992, the relevant year here.

The Internal Revenue Code permits a taxpayer to carry an NOL forward to future taxable years or back to preceding taxable years to offset taxable income generated in those years, yielding a tax refund.  I.R.C. § 172(b) (1994).  This provision "'permit[s] a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.'" *Six Seam Co. v. United States*, 524 F.2d 347, 351 (6th Cir. 1975) (quoting *Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386 (1957)).  In 1992, the general carryback period was

three years preceding the year in which the NOL was incurred. I.R.C. § 172(b)(1)(A)(i) (1994) (amended in 1997). In 1997, the three-year carryback was reduced to two years.

The Code extends the carryback period to 10 years for certain "specified liability losses." *Id*. § 172(b)(1)(C) (1994). A transition rule enacted in 1990 prohibits the SLL carryback to years preceding 1984. Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 11811(b)(2)(B), 104 Stat. 1388 (1990).

As of 1992, the Code defined SLL as follows:

**(1) In general**.—The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable year:

. . . .

**(B)** Any amount . . . allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law . . . if –

**(i)** In the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year . . . .

A liability shall not be taken into account under subparagraph (B) unless the taxpayer used an accrual method of accounting throughout the period or periods during which the acts or failures to act giving rise to such liability occurred.

**(2) Limitation**.—The amount of the specified liability loss for any taxable year shall not exceed the amount of the net operating loss for such taxable year.

I.R.C. § 172(f) (1994) (amended in 1998). Thus, a taxpayer is entitled to the SLL carryback if, among other things: (1) SL

a positive STI but remain when the member has a negative STI, we find that the IRS's interpretation is unreasonable.

Our conclusion is fortified by the IRS's history of adopting or applying differing interpretations of the SLL carryback in the consolidated return context. Such inconsistency, while not determinative, is a factor we consider in assessing whether an agency interpretation of its regulations is "reasonable." *See Martin*, 499 U.S. at 157-58; *Martin*, 5 F.3d at 146. We have identified at least two inconsistencies that undermine the IRS's analysis.

First, in a 1997 Technical Advice Memorandum, the IRS adopted an interpretation of the consolidated return regulations that differs from its analysis in this case. Tech. Adv. Mem. 9715002 (Apr. 11 1997). The Memorandum addressed the precise issue presented here—*i.e.*, "[w]hether specified liability expenses incurred by a member of a consolidated group may be carried back when that member has positive taxable income for the year in which the expenses are incurred." *Id.* While the IRS answered that question in the negative, as it does in this case, it offered different reasoning. Specifically, the IRS reasoned that a group is entitled to the SLL carryback only to the extent that the SL expenses do not exceed the "portion of the [CNOL] attributable to a member" that incurred the SL expenses. *Id.* According to the IRS, the "portion of the [CNOL] attributable to a member" must be calculated under the formula prescribed by Treas. Reg. § 1.1502-79(a)(3) (as amended in 1996). *Id.*

Even if we assume the Memorandum is reconcilable with the IRS's position in this case because a portion of the CNOL cannot be attributed to a member with a positive STI under Treas. Reg. § 1.1502-79(a)(3), the Memorandum's reliance on this regulation is entirely misplaced. Section 1.1502-79(a) (redesignated as Treas. Reg. § 1.1502-79A(a) by T.D. 8677) establishes a method for allocating CNOL to an individual member if a member seeks to carry back a loss to a "separate return year," *i.e.*, a year in which the member was not part of the consolidated group. The IRS contends that this allocation

preclude Intermet from taking advantage of the SLL carryback. Like the Tax Court, the IRS points out that the regulations require group members to deduct SL expenses in calculating their STI, since SL expenses do not appear on the list of "consolidated" items for purposes of calculating the group's taxable income. According to the IRS, in a case where the member incurring SL expenses also has a positive STI, the SL expenses "cannot give rise to any [CNOL] for the consolidated group, since those [expenses] are entirely absorbed by the income of the member before any consolidated item for the group is even computed." In other words, the IRS takes the position that Lynchburg's SL expenses were not "taken into account" in calculating Intermet's CNOL because Lynchburg's positive STI "eliminated" the SL expenses. On the other hand, the IRS asserts that a member's SL expenses are taken into account in a CNOL if the member has a negative STI because the expenses are "not entirely absorbed at the member level."

While we agree with the IRS's overall description of the consolidated return regulations, we reject its analysis. A member's STI is simply a step along the way to calculating the group's taxable income or CNOL. An STI has no other purpose. More to the point, the regulations prescribing the calculation of STI and CNOL do not govern the determination of CNOL carrybacks. That issue is governed by Treas. Reg. § 1.1502-21A(b), which applies the carryback principles of section 172 to the consolidated NOL of the group, rather than separate member "NOLs" or STIs, in situations such as this one, which do not involve separate return years. In addition, the IRS and the Tax Court perceive a distinction between positive and negative STI that is unsupported by the regulations. An STI's character as positive or negative has no independent significance—either for purposes of calculating CNOL or otherwise. A member's SL expenses affect the group's CNOL dollar-for-dollar, and it makes no difference whether the member has a positive or negative STI. Because neither the purpose nor the language of the consolidated return regulations provide a basis for concluding that the member's SL expenses are "exhausted" when the member has

expenses as defined under section 172(f)(1)(B) exist; (2) the taxpayer has an NOL for the year; (3) the SL expenses are "taken into account" in calculating the NOL; and (4) the SLL carryback does not exceed the NOL for the year.

The Code permits an affiliated group of corporations to file a consolidated return in lieu of separate income tax returns. It does not address whether, or how, the SLL carryback provision applies in the consolidated return context. Rather, the Code delegates to the Secretary of the Treasury broad authority to prescribe regulations

> as he may deem necessary in order that the tax liability of any affiliated group of corporations . . . may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

*Id.* § 1502. To file a consolidated return, all member organizations must agree to comply with the consolidated return regulations. *Id.* § 1501. Among the advantages of consolidated returns are the ability to offset gains and losses of group members and "greater utilization of NOL . . . carryovers." *Wolter Constr. Co. v. Commissioner*, 634 F.2d 1029, 1031 n.1 (6th Cir. 1980).

The Treasury Regulations comprise "the bulk of the 'law'" addressing consolidated returns. *Id.* at 1032. Unfortunately, the regulations do not specifically address the application of the SLL carryback. They do establish a default rule that "[t]he Internal Revenue Code, or other law, shall be applicable to the group to the extent the regulations do not exclude its application." Treas. Reg. § 1.1502-80(a) (as amended in 1997).

To determine the tax liability of an affiliated group under the regulations, it is first necessary to determine the consolidated taxable income for the group. *Id.* § 1.1502-2(a) (as amended in 1996). Consolidated taxable income is

determined under Treas. Reg. § 1.1502-11(a) (as amended in 1997) by taking into account the following items:

1.  The STI of each group member; and

2.  The following "consolidated" items: (a) the consolidated net operating loss deduction; (b) consolidated capital gain net income; (c) consolidated section 1231 net loss; (d) consolidated charitable contributions deduction; (e) consolidated section 922 deduction; (f) consolidated dividends received deduction; and (g) consolidated section 247 deduction.

A member's STI—which encompasses cases in which deductions exceed gross income (negative STI) and vice versa (positive STI)—is calculated pursuant to Treas. Reg. § 1.1502-12 (as amended in 1996). Each member computes its STI in a manner similar to a separate corporation computing taxable income, but with a number of modifications. For example, a member does not take into account the consolidated items specified in Treas. Reg. § 1.1501-11. *Id.* § 1.1502-12(h)-(n).

Section 1.1502-21A defines the CNOL deduction, one of the consolidated items to be taken into account in calculating taxable income, as the aggregate of the CNOL carryovers and carrybacks to the taxable year. *Id.* § 1.1502-21A(a) (as redesignated and amended by T.D. 8677, 1996-30 I.R.B. 7, 1996-2 C.B. 119). The aggregate carryovers and carrybacks consist of the group's CNOLs that may be carried back or over to the taxable year pursuant to I.R.C. § 172(b). *Id.* § 1.1502-21A(b)(1). The group's CNOL is calculated in a manner analogous to computing consolidated taxable income, taking into account: (1) the STI of each group member; (2) consolidated capital gain net income; (3) consolidated section 1231 net loss; (4) consolidated charitable contributions deduction; (5) consolidated dividends received deduction; and (6) consolidated section 247 deduction. *Id.* § 1.1502-21A(f).

To assess Intermet's position, the consolidated return regulations direct us first to determine whether the group, as opposed to its individual members, satisfies the Code's requirements for the SLL carryback. *See* Treas. Reg. § 1.1502-80(a). We find that Intermet does satisfy these requirements. First, for purposes of this appeal, we will assume that Lynchburg's claimed expenses satisfy the definition of SL expenses under I.R.C. § 172(f)(1)(B) since the Tax Court did not decide this issue. Second, there is no dispute that the "taxpayer"—Intermet—had a CNOL in 1992. Third, Lynchburg's SL expenses were "taken into account" in calculating Intermet's CNOL because they directly affected Lynchburg's STI which, in turn, affected Intermet's CNOL. Indeed, Lynchburg's SL expenses reduced Lynchburg's STI and increased Intermet's CNOL dollar-for-dollar. Finally, Intermet was entitled to carry back the full amount of Lynchburg's SL expenses because those expenses did not exceed Intermet's CNOL for the year.

The IRS argues that Intermet does not satisfy the Code's requirements because it is improper to equate the Code's references to "net operating loss" with Intermet's CNOL. We disagree. It is true that a group's CNOL is calculated somewhat differently than an individual corporation's NOL. But this is not dispositive. The consolidated return regulations tell us to apply the IRC provisions to "the group," and the CNOL represents the group's version of NOL. Moreover, the IRS has consistently taken the position—both in this case and otherwise—that the CNOL does have significance in applying the SLL carryback in the consolidated return context because only a group with a CNOL may take advantage of the carryback. *See* Tech. Adv. Mem. 9715002 (Apr. 11, 1997).

Having concluded that Intermet satisfies the statutory requirements for the SLL carryback, we next consider whether the consolidated return regulations somehow alter this result. *See* Treas. Reg. § 1.1502-80(a). Although the regulations do not explicitly address the SLL carryback, the IRS insists that the overall structure of those regulations