103 F.3d 131
 44 ERC 1606
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
STONE CONTAINER CORPORATION, Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
 No. 96-3479.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1996.
 
 On Petition for Review of A Decision of the Environmental Protection Agency, No. EPA-5-96-113(a)-OH-2.
 EPA
 REVIEW DENIED.
 Before: NELSON and NORRIS, Circuit Judges; COHN, District Judge.*
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Stone Container Corporation ("Stone") seeks pre-enforcement review of an order in which Region V of the Environmental Protection Agency ("Region V") directed Stone to conduct periodic emissions testing of a wood waste and natural gas fired boiler, designated Boiler No. 6, at its Coshocton, Ohio, mill. Stone argues that the testing conditions prescribed in the order are inconsistent with regulations the Environmental Protection Agency ("EPA") promulgated under the Clean Air Act, 42 U.S.C. § 7401 et seq. ("the Act"). Region V maintains that this court is without jurisdiction to review the testing order and, in the alternative, that the order meets the requirements of governing regulations.
 
 
 2
 Shortly after Stone filed this appeal, Region V moved to dismiss Stone's petition on jurisdictional grounds. On July 5, 1996, a panel of this court denied the motion, concluding that this court has jurisdiction to review the testing order pursuant to 42 U.S.C. § 7607(b). The panel stayed the testing order pending our decision. We need not reconsider the issue of jurisdiction because, for the reasons discussed below, we hold that the testing order is not inconsistent with EPA regulations under the Act. In other words, the order will stand whether or not we have jurisdiction.
 
 
 3
 Section 114 of the Act gives the EPA authority to "require any person who owns or operates any emission source ... on a one-time, periodic or continuous basis to ... sample such emissions (in accordance with such procedures or methods, at such locations, at such intervals, during such periods and in such manner as the Administrator shall prescribe)." 42 U.S.C. § 7414(a)(1)(D). Section 60.8 of the EPA regulations promulgated under section 114 of the Act provides that the EPA may require owners and operators of emission sources to conduct performance tests, 40 C.F.R. § 60.8(a), and that such "[p]erformance tests shall be conducted under such conditions as the Administrator shall specify to the plant operator based on representative performance of the affected facility." 40 C.F.R. § 60.8(c).
 
 
 4
 On February 29, 1996, Region V issued an Administrative Order pursuant to 40 C.F.R. § 60.8(a) directing Stone to conduct particulate stack tests on Boiler No. 6, "during which the associated boiler is operating at a steam rate of 400,000 pounds steam/hour." The order explicitly stated that
 
 
 5
 [b]ased upon the provisions of the Act, Boiler No. 6's steam load records for January 1992 to July 1995, provided to U.S. EPA by [Stone] subsequent to July 21, 1995, and the conditions of its permit, U.S. EPA finds that [Stone's] operation of Boiler No. 6 at a steam rate of 400,000 pounds of steam per hour is an operation constituting representative performance. 40 C.F.R. § 60.8(c).
 
 
 6
 Stone challenges the prescribed testing conditions, arguing that the mandated steam rate does not constitute representative performance of its boiler, as required by 40 C.F.R. § 60.8(c), because a steam rate of 400,000 pounds per hour represents the boiler's maximum rated operating capacity, and also because operating data for the last three and one-half years shows that the boiler operated at or above the mandated steam rate less than one percent of the time. Stone urges us to interpret 40 C.F.R. § 60.8(c) as requiring the EPA to set testing conditions at an operating level that corresponds to the historical average steam rate for its boiler. In response, Region V maintains that its interpretation of 40 C.F.R. § 60.8(c) as allowing it to order a regulated facility to conduct performance tests at the facility's maximum rated operating capacity is reasonable and is thus entitled to deference from this court. We agree with Region V.
 
 
 7
 It is well-established that the EPA's construction of its own regulations is entitled to substantial deference. See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). When the language of the regulation is ambiguous, the reviewing court should give effect to the EPA's interpretation so long as it reasonably conforms to the purpose and wording of the regulation. See, e.g., Martin v. American Cyanamid Co., 5 F.3d 140, 144 (6th Cir.1993) (citing Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150-51 (1991)). In determining whether an agency's interpretation of a particular regulation is "reasonable," a reviewing court may consider, among other factors, the administrative history of the regulation, see, e.g., State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 868 F.2d 810, 815 (6th Cir.1989), and the agency's past practices in interpreting and implementing the regulation in question. See, e.g., 499 U.S. at 157.
 
 
 8
 Region V's interpretation of 40 C.F.R. § 60.8(c) is supported by both the administrative history and the EPA's past interpretation of the regulation. The EPA first issued a regulation containing the term "representative performance" in 1971. See 36 Fed.Reg. 24,877 (Dec. 23, 1971). At that time, fossil fuel steam generators, such as Boiler No. 6, were one of only five separate source categories subject to the testing requirements of 40 C.F.R. Part 60. For each of the source categories covered by the regulation, the EPA prescribed that performance tests were to be conducted "while the affected facility is operating at or above the maximum ... rate at which such facility will be operated ... and under such other relevant conditions as the Administrator shall specify based on representative performance of the affected facility." See 40 C.F.R.Pt. 60, subpts. D-H (1972). As the number of source categories regulated under Part 60 increased, the EPA revised its generic performance test regulation, Section 60.8(c), "to require that performance tests be conducted under conditions specified by the Administrator based on representative performance of the affected facility." See 39 Fed.Reg. 20,790, 20,791 (June 14, 1974). The EPA then deleted the "representative performance" language from the test procedures for individual source categories. Id. The EPA specifically noted, however, that this change was only "intended for clarification and for maintaining consistency throughout the regulations [and was] not intended to alter the substantive content of the regulation[]." Id. Thus, the history of 40 C.F.R. § 60.8(c) strongly suggests that the regulation was intended to allow the EPA to order regulated facilities to conduct performance tests at their maximum rated capacities.
 
 
 9
 In addition, the EPA has previously published interpretative rules and enforcement regulations which support Region V's interpretation of 40 C.F.R. § 60.8(c). See Compilation Guide of Procedural Decisions on EPA NSPS Reference Methods (September 1984). For example, when asked whether the agency has a policy as to the steam production rate at which performance tests should generally be conducted, the EPA responded that it "recommend[s] that testing occur at maximum production capacity." Id. at 45. Similarly, when asked how performance tests should be conducted on fossil fuel fired steam generators in particular, the agency wrote that "[t]he test[s] should be conducted at or above the normal steam production rate, but preferably at design capacity in order to avoid the necessity of additional tests if normal operating capacity is increased." Id. at 33. In light of the administrative history of 40 C.F.R. § 60.8(c), and the EPA's past practices in interpreting that regulation, we conclude that Region V's interpretation is not unreasonable.
 
 
 10
 Accordingly, Stone's petition to set aside Region V's order of February 29, 1996, directing the company to conduct periodic performance tests at at a steam rate of 400,000 pounds of steam per hour, is denied.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation