**AMTEL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 93–548T.**

United States Court of Federal Claims.

July 27, 1994.

Eric R. Fox, Washington, DC, for plaintiff.

Mildred L. Seidman, Tax Division, U.S. Dept. of Justice, with whom were Loretta C. Argrett, Asst. Atty. Gen., and David Gustafson, Asst. Chief, Court of Federal Claims Section, Washington, DC, for defendant.

## OPINION

MARGOLIS, Judge.

This tax case is before the court on cross-motions for summary judgment. Plaintiff seeks to carry back a product liability loss from a consolidated return year to a separate return year under 26 U.S.C. §§ 172, 1501–1503, and the consolidated return regulations. Plaintiff argues it is entitled to such a carryback because a consolidated group is treated as a single entity with respect to the product liability loss provisions. Defendant counters that plaintiff has no net operating loss for the consolidated return year and, therefore, cannot carry back any product liability loss to a separate return year. After hearing oral argument, and after carefully reviewing the record, the court grants defendant's motion for summary judgment.

## FACTS

Plaintiff, Amtel, Inc. ("Amtel"), filed a consolidated federal income tax return for 1975 as the parent of an affiliated group of companies which included The Litwin Corporation ("Litwin") and Litwin Panamerican Corporation ("Litwin Panamerican"). Pursuant to that return, Amtel paid $25,786 in federal income taxes. On November 28, 1977, AMCA International Corporation ("AMCA") acquired Amtel and its subsidiaries. Thereafter, AMCA included the income of Amtel, Litwin, and Litwin Panamerican in its consolidated federal income tax returns.

For tax year 1985, AMCA filed a consolidated return which included 26 corporations, and reported a consolidated net operating loss of $85.5 million and $6.1 million of deductions attributable to product liability, as adjusted by the Internal Revenue Service

("IRS") upon audit. During that same period, Amtel, Litwin, and Litwin Panamerican reported separate taxable incomes and deductions attributable to product liability as follows:

| Company | Separate Taxable Income | Product Liability Deduction |
|---|---|---|
| Amtel | $3,446,264 | $13,218 |
| Litwin | $ 858,407 | $14,139 |
| Litwin Panamerican | $1,208,878 | $ 5,056 |
| Total | $5,513,549 | $32,413 |

On December 14, 1987, Amtel timely filed a tax refund claim for 1975. Amtel asserted that it was entitled to carry back the $32,413 of product liability loss from AMCA's 1985 consolidated return to offset income reported on the 1975 return. Amtel requested a $15,-514 refund based on its claim. Defendant, the United States, acting through the Internal Revenue Service, took no formal action with respect to Amtel's claim.

## DISCUSSION

■ This case raises a legal question regarding the application of 26 U.S.C. § 172(j)(1). Specifically, the parties dispute the method by which a taxpayer may carry back a product liability loss from a consolidated return year to a separate return year. The court must determine whether Amtel's or defendant's approach is consistent with the relevant provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1 *et seq.* ("Code"), and Department of the Treasury regulations.

Section 172 of the Code allows taxpayers to offset income from prior tax years by carrying back a "net operating loss." Code § 172(a). Generally, a net operating loss carryback is limited to the three years preceding the taxable year of such loss. Code § 172(b)(1)(A). Congress expressly relaxed this limitation, however, for product liability losses. As Code § 172(b)(1)(I) provides, a "product liability loss shall be a net operating loss carryback to each of the 10 taxable years preceding the loss year." The Code defines "product liability loss" as the *lesser* of—

(A) the net operating loss for such year reduced by any portion thereof which is

attributable to a foreign expropriation loss, or

(B) the sum of the amounts allowable as deductions under sections 162 [Trade or Business Expenses] and 165 [Losses] which are attributable to—

(i) product liability, or

(ii) expenses incurred in the investigation or settlement of, or opposition to, claims against the taxpayer on account of product liability.

Code § 172(j)(1).[1] Thus, the Code does not allow a taxpayer to carry back a product liability loss if the taxpayer has no "net operating loss."

The Code permits companies which are members of an affiliated group to file a consolidated federal income tax return. Code § 1501. The principal advantage in filing a consolidated return is income blending: the losses of unprofitable group members can offset the income of profitable group members and mitigate the current tax liability. Congress delegated broad authority to the Commissioner of the IRS to establish rules for filing consolidated returns. Code § 1502. As that statute provides,

The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

In order to qualify for treatment as a consolidated group, all members must agree to be bound by the consolidated return regulations as promulgated by the Commissioner of the IRS. Code §§ 1501–1503.

Amtel seeks to carry back a product liability loss from a consolidated return year to a separate return year. For 1985, the tax year at issue, AMCA included Amtel on its consolidated federal income tax return. In 1975, the year to which Amtel seeks to carry back the 1985 product liability loss, Amtel filed a consolidated federal income tax return, but not as part of AMCA's affiliated group. Thus, as defined by the consolidated return regulations, 1975 was a "separate return year" for Amtel. Treas.Reg. § 1.1502-1(e).

Amtel cannot carry back a product liability loss from 1985 to 1975 because it had no net operating loss in 1985. The term "net operating loss" in the context of a consolidated income tax return generally means the net operating loss of the consolidated group as a whole, and not the separate net operating loss of a member. *See, e.g.,* Treas.Reg. § 1.1502-21 (establishing method for computing consolidated net operating loss deduction).

However, contrary to Amtel's assertion, a member of an affiliated group may have a separate net operating loss with independent significance for income tax purposes. The IRS does not apply the single entity approach when a taxpayer seeks to carry back a net operating loss from a consolidated return year to a separate return year. In that context, the Service treats the members as separate by apportioning the consolidated net operating loss. *See* Treas.Reg. § 1.1502-79(a). As that regulation provides,

If a consolidated net operating loss can be carried ... to a separate return year of a corporation ... then the portion of such consolidated net operating loss attributable to such corporation ... shall be apportioned to such corporation....

Treas.Reg. § 1.1502-79(a)(1)(i). Moreover, the regulation specifies a method for allocat-

---

1. For purposes of this section, "product liability" means

(A) liability of the taxpayer for damages on account of physical injury or emotional harm to individuals, or damage to or loss of the use of property, on account of any defect in any product which is manufactured, leased, or sold by the taxpayer, but only if

(B) such injury, harm, or damage arises after the taxpayer has completed or terminated operations with respect to, and has relinquished possession of, such product.

Code § 172(j)(2).

ing a consolidated net operating loss if a member seeks to offset income from a separate return year. Pursuant to subparagraph (3),

> The portion of a consolidated net operating loss attributable to a member of a group is an amount equal to the consolidated net operating loss multiplied by a fraction, the numerator of which is the separate net operating loss of such corporation, and the denominator of which is the sum of the separate net operating losses of all members of the group in such year having such losses.

Treas.Reg. § 1.1502–79(a)(3).

Under this consolidated return regulation, Amtel cannot offset income from 1975 with a product liability loss from 1985. Section 172(j)(1) limits Amtel's product liability loss carryback from 1985 to its 1985 net operating loss. The court finds that it must apply the allocation formula of Treasury Regulation § 1.1502–79(a)(3) to determine Amtel's 1985 net operating loss, as that term is used in section 172(j)(1), because Amtel seeks to offset income from a separate return year. Amtel admits that its separate net operating loss in 1985 was zero. *See* Plaintiff's Proposed Findings of Uncontroverted Fact ¶ 11 (averring Amtel, Litwin, and Litwin Panamerican all had taxable income in 1985). Therefore, applying the formula of 1.1502–79(a)(3):

Amtel's Portion of AMCA's 1985 Net Operating Loss =

$$\frac{\text{Amtel's Separate Net Operating Loss}}{\text{AMCA's Consolidated Net Operating Loss}} \times \text{AMCA's Consolidated Net Operating Loss} =$$

$$\frac{\$0}{\$85.5 \text{ million}} \times \$85.5 \text{ million} = \$0.$$

---

Amtel argues that the court must apply the single entity approach to section 172(j)(1). According to Amtel, section 172(j)(1) only limits a product liability loss carryback in this case to the lesser of AMCA's consolidated net operating loss and AMCA's "consolidated product liability loss." Amtel maintains that section 172(j)(1) requires the court to employ a two-step analysis. First, the court must compare AMCA's consolidated net operating loss for 1985 with its "consolidated product liability loss" to determine the limit on a product liability loss carryback. Once this threshold is established, Amtel asserts it may carry back its proportional share of AMCA's total product liability loss deductions. Amtel maintains it may carry back a product liability loss because AMCA's total product liability loss deductions for 1985, $6.1 million, were less than its consolidated net operating loss, $85.5 million. Further, Amtel applies Treasury Regulation § 1.1502–79(a)(3) to claim a portion of the $6.1 million of product liability deductions as follows:

$$\frac{\text{Amtel's Separate Product Liability Loss}}{\text{AMCA's "Consolidated Product Liability Loss"}} \times \text{AMCA's "Consolidated Product Liability Loss"} =$$

$$\frac{\$32,413}{\$6.1 \text{ million}} \times \$6.1 \text{ million} = \$32,413.$$

---

Amtel argues this approach is consistent with the Code and consolidated return regulations. Amtel also asserts the approach is supported by Technical Advice Memorandum

8,816,002 (Dec. 31, 1987), Treasury Regulation § 1.1502–21(b)(2)(iii), and *American Standard, Inc. v. United States*, 220 Ct. Cl. 411, 602 F.2d 256 (1979). The court addresses and rejects these arguments *seriatim.*

Amtel's argument that the court should use AMCA's "consolidated product liability loss" when applying section 172 because that approach is consistent with the Code and consolidated return regulations is not persuasive. As noted above, the Code charges the Commissioner of the IRS with broad authority to administer the consolidated return filing system, and expressly binds all members of an affiliated group to the consolidated return regulations. The consolidated return regulations specifically treat certain items on a consolidated basis, including: the "consolidated net operating loss deduction," Treas. Reg. § 1.1502–21; the "consolidated charitable contributions deduction," Treas. Reg. § 1.1502–24; the "consolidated section 922 deduction," Treas. Reg. § 1.1502–25; the "consolidated dividends received deduction," Treas. Reg. § 1.1502–26; and the "consolidated section 247 deduction," Treas. Reg. § 1.1502–27. Those regulations do not use the term "consolidated product liability loss" or incorporate such a concept by directing that product liability loss be treated on a consolidated basis. Since the consolidated return regulations specifically identify several deductions which are treated on a consolidated basis, and do not specifically identify a "consolidated product liability loss deduction," and in light of the general principle that deductions are construed narrowly, *see Massachusetts Mut. Life Ins. Co. v. United States*, 5 Cl.Ct. 581, 584 (1984), *aff'd*, 761 F.2d 666 (Fed.Cir.1985) (citing *Commissioner v. National Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974)), the court must reject Amtel's approach.

Finally, Amtel's reliance on a technical advice memorandum, Treasury Regulation § 1.1502–21(b)(2)(iii), and *American Standard* is misplaced. The Code specifically precludes Amtel and the court from using or citing a technical advice memorandum as precedent. Code § 6110(j)(3). Moreover, Treasury Regulation § 1.1502–21(b)(2)(iii)

and *American Standard* are not persuasive because they do not concern either a product liability loss or a carryback from a consolidated return year to a separate return year. Treasury Regulation § 1.1502–21(b)(2)(iii) addresses the carryover of foreign expropriation losses from one consolidated return year to another consolidated return year, while *American Standard* involves the particular issue of deductions for Western Hemisphere trade corporations on consolidated returns.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment. The Clerk will dismiss the complaint and enter judgment for defendant accordingly. No costs.